IN THE UNITED STATE DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION

RECEIVED
2014 AUG -8 A 9:57
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **KEITH BLACKMON, an individual** | |
| **Plaintiff,** | |
| v. | CASE NUMBER: 3:14-CV-856-MHT-CSC |
| **CAVALRY PORTFOLIO SERVICES, LLC, and DYNIA & ASSOCIATES, LLC,** | JURY DEMANDED BY PLAINTIFF |
| **Defendants.** | |

## COMPLAINT

**COMES NOW** Keith Blackmon, (hereinafter "Plaintiff"), by and through his undersigned counsel, and states as follows:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), out of state law violations and out of the invasions of Plaintiff's personal and financial privacy by the Defendants and their agents in their illegal efforts to collect a consumer debt from Plaintiff.

2. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.
    (b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
    (c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.
    (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even

-1-

    where abusive debt collections practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

 (e) It is the **purpose** of this title **to eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## PARTIES

3. Plaintiff is a natural person whose principal residence is Opelika, Alabama, located within the Middle District of Alabama.

4. Defendant Calvary Portfolio Services, LLC (hereinafter individually as "Calvary") is a debt collection firm that engages in the business of debt collection, who conducts business in the state of Alabama.

5. Defendant Dynia & Associates, LLC (hereinafter individually as "Dynia") is a debt collection firm that engages in the business of debt collection, who conducts business in the state of Alabama.

6. Any reference to any "Defendant" or "Defendants" includes both Defendants jointly.

## FACTUAL ALLEGATIONS

7. Plaintiff allegedly incurred a financial obligation to WaMu Chase that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

8. On or about October 27, 2011, Plaintiff received a Judgment in his favor with the determination that he does not owe the debt the above parties are collecting.

9. Based on information and belief, on a date between October 27, 2011 and January 16, 2012, WaMu Chase sold its alleged debt to Equitable Ascent Financial, LLC.

10. On or about January 16, 2012, Plaintiff received a collection letter from Leading Edge Recovery Solutions, LLC, collecting for Equitable Ascent Financial, LLC for the above referenced alleged debt.

11. On or about February 6, 2012, Plaintiff, through his attorney, notified Leading Edge Recovery Solutions, LLC, that he had received a judgment in his favor determining that he does not owe the debt that Leading Edge Recovery Solutions, LLC was collecting.

12. Based on information and belief, on a date between February 6, 2012, and August 9, 2013, Equitable Ascent Financial, LLC sold its alleged debt to Cavalry SPV I, LLC.

13. On or about August 9, 2013, Dynia sent a collection letter on the above referenced debt. This letter violated the FDCPA by attempting to collect on a debt the Plaintiff does not owe.

14. On or about December 5, 2013, Calvary Portfolio Services, LLC sent a collection letter on the above referenced debt. This letter violated the FDCPA by attempting to collect on a debt the Plaintiff does not owe.

15. Plaintiff does not owe any money to the Defendants.

16. Through the decision of the District Court of Lee County, Alabama, the Defendants knew or should have known that the Plaintiff does not owe this debt.

17. The Defendants have decided, in a calculated decision, to continue to collect against Plaintiff on a debt Plaintiff does not owe.

18. The purpose of the Defendants in continuing to collect against Plaintiff is to harass, annoy, abuse, or oppress Plaintiff.

19. The Defendants have been successful, as their actions have annoyed, harassed, abused, and/or oppressed Plaintiff.

20. Cavalry has damaged the Plaintiff's credit by falsely reporting that he still owes the debt on his credit report. The Plaintiff has suffered damage to his credit.

21. The Defendants have failed to give Plaintiff all required notices and disclosures.

22. Even though the Defendants know Plaintiff does not owe this debt, they are perfectly willing to collect on a debt that they have no legal right to collect on for several reasons.

23. First, the Defendants believe that most Alabama consumers will not know that it is illegal for the Defendants to collect on a debt that is not owed.

24. Second, the Defendants believe that the very few Alabama consumers, who realize it is illegal for the Defendants to act in this way, will be able to find representation or will otherwise take action.

25. The Defendants believe that these very few Alabama consumers who do take action will either drop the matter or will file a pro se case which will be removed to federal court where counsel for the Defendants will be able to defeat the claims of the pro se consumer plaintiff.

26. Third, even if the Alabama consumer is able to find representation, the Defendants are confident that they will not have to pay any damages above the maximum statutory damages of $1,000.

27. The Defendants believe that judges will not allow mental anguish to go to the jury.

28. The Defendants believe no punitive damages will be assessed against them under state law.

29. The Defendants believe that any suit against them under the FDCPA can be defeated by an offer of judgment of $1,501 or some other small number above $1,000.

30. The Defendants believe that since they will very rarely be sued in Alabama, particularly given the massive number of violations they commit in Alabama, and given that they believe (incorrectly) that they are not subject to mental anguish claims and punitive damages claims, the Defendants are quite willing to continue to break the law in Alabama.

31. The Defendants have determined that the costs of limited litigation (by settling cases cheaply or small offers of judgment) are vastly outweighed by the profit in harassing and abusing Alabama consumers into paying money that would not have been paid if the Defendants had not harassed and abused Alabama consumers.

33. Unfortunately, the Defendants are correct in their conclusion that it is more profitable to violate the law than to obey it.

34. The Defendants' actions not only harm Alabama consumers, but also put legitimate and law abiding debt collectors at a competitive disadvantage.

35. Congress recognized this problem over 30 years ago and that is part of the reason the FDCPA was passed.

36. The Defendants' analysis is that they enjoy a competitive advantage due to their willingness to violate the law.

37. This lawsuit seeks to change that analysis.

38. The Defendants have not apologized to the Plaintiff.

39. The Defendants have no intention of apologizing to the Plaintiff.

40. The Defendants are debt collectors under 15 U.S.C. § 1692a(6).

## SUMMARY

41. All the above-described collection communications made to Plaintiff by the Defendants and collection agents of the Defendants were made in violation of the FDCPA.

42. The Defendants violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, 1692f(1), and 1692g.

43. The above detailed conduct by the Defendants of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

44. The above detailed conduct by the Defendants reflect their knowledge and appreciation for the harm that would naturally and likely happen to Plaintiff and with full knowledge thereof that the Defendants willfully, maliciously, recklessly, and/or negligently undertook their actions and it was successful in causing the harm to the Plaintiff that the Defendants wanted to cause.

45. The collection activities by the Defendants and their agents caused Plaintiff stress and anguish.

46. The Defendants' repeated attempts to collect this debt from Plaintiff and refusal to stop violating the law was an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

47. Plaintiff has suffered actual damages as result of these illegal collection communications by the Defendants in the form of monetary loss, anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of the Defendants.

48. The only way that abusive debt collectors like the Defendants will stop their abusive practices toward consumers is by a jury verdict fully compensating Plaintiff for the harm done to Plaintiff and by a punitive damage award.

49. A punitive damage award will get the attention of the Defendants and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain unfair competitive advantage over honorable, law abiding collectors.

50. A full compensatory damage award and full punitive damage award will accomplish the goals of Congress in passing FDCPA – stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

## RESPONDEAT SUPERIOR LIABILITY

51. The acts and omissions of the Defendants' agents who communicated with Plaintiff as more further described herein, were committed within the line and scope of their agency relationship with their principals the Defendants.

52. The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by the Defendants in collecting consumer debts.

53. By committing these acts and omissions against Plaintiff, these other debt collectors were motivated to benefit their principals the Defendants.

54. The Defendants are therefore liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions

done in violation of state and federal law by their collection employees, including but not limited to violations of the FDCPA and Alabama tort law, in their attempts to collect this debt from Plaintiff.

55. The Defendants negligently and/or wantonly and/or hired, retained, trained or supervised incompetent debt collectors and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

56. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57. The acts and omissions of the Defendants and their agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff including but not limited to the following: 1692d, 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g.

58. As a result of the Defendants violations of the FDCPA, Plaintiff is entitled to statutory damages; actual and compensatory damages; and reasonable attorney's fees, expenses and costs, from the Defendants.

### COUNT II.

### INVASION OF PRIVACY

59. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated therein.

60. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and the Defendants violated Alabama state law as described in this Complaint.

61. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instabilities, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

62. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

63. The Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

64. The Defendants and/or their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

65. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

66. The conduct of the Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by the Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

67. The conduct of the Defendants went beyond the bounds of reasonableness in the collection of the alleged debt for all the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

68. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from the Defendants.

69. All acts of the Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such the Defendants are subject to punitive damages.

## COUNT III.

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

70. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

71. The Defendants negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

72. Had the Defendants hired competent debt collectors, the violations described in this Complaint would not have occurred.

73. Had the Defendants properly trained and/or supervised the debt collectors, the violations described in this Complaint would not have occurred

74. The Defendants carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

75. The Defendants knew that the actions they were taking against the Plaintiff would likely cause the exact type of injuries and damages that Plaintiff suffered at the hands of the Defendants.

## COUNT VI.

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

76. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

77. The Defendants owe a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

78. The Defendants owe a duty to consumers against whom it is collecting to act reasonably.

79. All of the actions described in this Complaint demonstrate that the Defendants did not act reasonably towards the Plaintiff.

80. The Defendants proximately caused injuries and damages to Plaintiff which were of the precise nature that the Defendants anticipated causing when they breached their duty to act reasonably.

81. The Defendants knew, or should have known, that their conduct was likely to lead to the Plaintiff's injuries yet it acted despite this knowledge.

82. The Defendants acted with full knowledge and with the design and intent to cause harm to Plaintiff.

83. The Defendants were successful in their design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of the Defendants when dealing with consumers who do not pay debts that the Defendants allege are owed.

84. The Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

85. The Defendants violated all of the duties of the Defendants had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

86. It was foreseeable, and the Defendants did in fact foresee it, the actions of the Defendants would lead and did lead to the exact type of harm suffered by Plaintiff.

87. The Defendants acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

88. The Defendants invaded the privacy of Plaintiff as set forth in Alabama law.

89. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

90. As a result of this conduct, action, and inaction of the Defendants, Plaintiff has suffered damage as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Done this the 7th day of August, 2014.

/s/ Charles M. Ingrum, Jr.
Charles M. Ingrum, Jr. (ING-028)
Attorney for the Plaintiff
P.O. Box 229
Opelika, AL 36803
(334) 745-3333
FAX (334) 745-3155
cmi2@irplaw.com


**PLAINTIFF DEMANDS TRIAL BY JURY**

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS**

**Cavalry Portfolio Services, LLC**
**500 Summit Lake Drive, Suite 408**
**Valhalla, NY 10595**

**Dynia & Associates, LLC**
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104